# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF GEORGIA SAVANNAH DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALAN R. BURNSED and BEVERLY AMBER BURNSED, | ) | |
| | ) | |
| *Debtors.* | ) | |
| | ) | |
| | ) | Chapter 13 |
| O. BYRON MEREDITH, III, Chapter 13 Trustee, | ) | |
| | ) | Number <u>19-41654-EJC</u> |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BMW FINANCIAL SERVICES NA, LLC, | ) | |
| | ) | |
| *Respondent.* | ) | |

## <u>OPINION ON TRUSTEE'S OBJECTION TO CLAIM</u>

Before the Court is the Objection to Claim (the "Claim Objection") filed by

O. Bryon Meredith, III, the Chapter 13 Trustee. (Dckt. 95). The Debtors in this case,

Alan R. Burnsed and Beverly Amber Burnsed, initially proposed to retain their

motor vehicle, which was purchased within 910 days before the petition date, and to

pay the claim in full with interest. After confirmation, the Debtors sought to modify

1

their plan to surrender the vehicle to the creditor, BMW Bank of North America ("BMW"). The plan modification form, use of which is mandatory in this district pursuant to the Court's General Order Number 2017-4, states that the collateral "is surrendered to the creditor to satisfy the secured claim to the extent shown below" and that "[a]ny allowed deficiency balance resulting from a creditor's disposition of the collateral will be treated as an unsecured claim" if the creditor timely amends its proof of claim. (Dckt. 84, p. 2). The local form plan goes on to provide space for debtors to include case-specific details, including the name of the creditor, a description of the collateral, and the amount of the claim satisfied. Under this last category, the Debtors indicated that the amount of BMW's claim satisfied was "Full Satisfaction." (Dckt. 84, p. 2).

No party in interest objected to the modification, which was confirmed by the Court. BMW subsequently repossessed and sold the vehicle. When BMW filed an amended proof of claim for the deficiency balance, the Chapter 13 Trustee objected, arguing that under the terms of the modified plan, the vehicle's surrender was in full satisfaction of the debt. BMW disputes this reading of the modified plan on grounds that it violates binding Eleventh Circuit case law, but the Chapter 13 Trustee contends that BMW has waived this argument by failing to object to confirmation of the modification. For the reasons set forth below, the Court rejects the Chapter 13 Trustee's argument and finds that the modified plan permits BMW to file its

2

deficiency claim. Accordingly, the Court will overrule the Chapter 13 Trustee's Claim Objection.

## I. **Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B).

## II. **Factual Background**

The facts in this case are undisputed. On November 19, 2019, the Debtors filed a Chapter 13 petition. (Dckt. 1). In their schedules, the Debtors listed a 2018 BMW X5 valued at $69,396.00. (Dckt. 1, pp. 11, 19).[1] The motor vehicle secured the claim of BMW, which filed its proof of claim in the amount of $68,607.64 on December 5, 2019. (Claim No. 7-1).

The Debtors amended their Chapter 13 plan, originally filed on the petition date, three times prior to confirmation. (Dckt. 4, 14, 43, 55). Each iteration of the plan indicated that the vehicle securing BMW's claim was purchased within 910 days before the petition date and was subject to the so-called "hanging paragraph" of 11 U.S.C. § 1325(a). The Debtors proposed to retain the vehicle and to pay

---

[1] The Debtors' valuation of the vehicle remained the same in their subsequent amendments of their Schedule A/B. (Dckt. 41, p. 2; Dckt. 72, p. 2).

BMW's claim in full. In their third amended plan, which resolved a number of objections raised by the Chapter 13 Trustee and the United States Trustee (dckt. 24, 26, 46, 47), the Debtors proposed to make monthly payments of $1,375.00 to BMW at 4.50% interest. (Dckt. 55, p. 2). The Debtors also proposed to pay a 100% dividend to unsecured creditors. (Dckt. 55, p. 3, ¶ 4(h)). On September 2, 2020, the Court confirmed the Debtors' third amended plan. (Dckt. 69).

On November 5, 2020, the Debtors filed a Modification to Chapter 13 Plan After Confirmation (the "Modified Plan"). (Dckt. 84). Under the terms of the Modified Plan, which did not change the proposed 100% dividend to unsecured creditors, the Debtors proposed to surrender the vehicle to BMW and, additionally, to suspend payments to Santander Consumer USA, Inc. ("Santander") due to the pending sale of a 2015 Jeep Wrangler, which would pay off the $12,234.00 debt to Santander.[2] Consequently, total plan payments would decrease from $3,800.00 per month to $2,675.00 per month for the remainder of the 60-month term of the plan. (Dckt. 84, p. 2). Importantly, the provision regarding the surrender of the BMW vehicle states as follows:

> c. Surrender of Collateral: The following collateral is surrendered to the creditor to satisfy the secured claim to the extent shown below upon confirmation of this proposed modification. The Proponent(s) request(s) that

---

[2] Santander filed its proof of claim on December 10, 2019. (Claim No. 10). On October 6, 2020, the Debtors moved to sell the 2015 Jeep Wrangler. (Dckt. 73). The Court granted the Debtors' motion on November 5, 2020. (Dckt. 86).

upon confirmation of the plan, as modified, the stay under
11 U.S.C. § 362(a) be terminated as to the collateral only
and that the stay under 11 U.S.C. § 1301 be terminated in
all respects. Any allowed deficiency balance resulting
from a creditor's disposition of the collateral will be
treated as an unsecured claim in paragraph 4(h) of the plan
if the creditor amends its previously filed, timely claim
within 180 days from the entry of the order confirming this
proposed modification or by such additional time as the
creditor may be granted upon motion filed within that 180-
day period.

| CREDITOR | DESCRIPTION OF COLLATERAL | AMOUNT OF CLAIM SATISFIED |
|---|---|---|
| BMW Bank | 2018 BMW X5 | Full Satisfaction |

(Dckt. 84, p. 2). As the basis for this proposed modification, the Debtors represented

that they could no longer afford their plan payments and thus sought to surrender the

vehicle to BMW. (Dckt. 84, p. 2). Apart from the surrender of the BMW vehicle, the

suspension of disbursements to Santander, and the reduction in the amount of

monthly plan payments, the other provisions of the confirmed plan "remain[ed] in

full force and effect." (Dckt. 84, p. 2).

No party in interest objected to the Modified Plan, and on December 3, 2020,

the Chapter 13 Trustee moved to confirm it. (Dckt. 90). Pursuant to the Court's

negative notice procedures,[3] an Order Confirming Modified Plan was entered on

---

[3] See Amended General Order Number 2005-1 [Negative Notice Procedures], which provides
that "upon the expiration of the deadline for any objection to the relief sought" in a post-
confirmation modification, the presiding judge "may, without further notice or hearing to any
party, enter [the] order."

5

December 15, 2020 without a hearing. (Dckt. 93). In accordance with the terms of the Modified Plan, the Debtors surrendered the motor vehicle to BMW, which subsequently sold the vehicle on January 25, 2021. (Claim No. 7-2, Part 2, p. 14). On March 3, 2021, well within the 180 days contemplated by the Modified Plan, BMW amended its proof of claim to reflect a $26,809.30 unsecured deficiency claim. (Claim No. 7-2).

On March 12, 2021, the Chapter 13 Trustee filed the instant Claim Objection requesting that BMW's amended claim be disallowed "on the grounds that the confirmed/modified plan provided for the collateral to be surrendered to the Creditor in full satisfaction of the claim." (Dckt. 95, p. 2). The Chapter 13 Trustee further asserted that "[t]he plan did not propose any payments to this creditor from the amounts paid to the Chapter 13 Trustee, and there appears to be no order granting leave to file the deficiency claim." (Dckt. 95, p. 2).

This matter came on for hearing on May 4, 2021. At the hearing, the Court heard argument from BMW's counsel and from counsel for the Chapter 13 Trustee, as well as from Debtors' counsel. All the parties agreed that BMW's collateral was a 910 vehicle within the meaning of the hanging paragraph. They also concurred that BMW's post-surrender sale of the vehicle was commercially reasonable.[4] The

---

[4] *See* O.C.G.A. § 11-9-610 ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."); O.C.G.A. § 11-9-627 ("[d]etermination of whether conduct was commercially reasonable").

Chapter 13 Trustee, however, asserted that BMW was not entitled to a deficiency claim because the language in the Modified Plan provided for the surrender of the vehicle in full satisfaction of BMW's claim. When BMW pointed out that this interpretation of the Modified Plan would violate binding Eleventh Circuit case law, the Chapter 13 Trustee replied that BMW failed to object to confirmation of the Modified Plan and, under principles of res judicata, is now foreclosed from objecting to any improper plan provisions. The Debtors agreed with the Chapter 13 Trustee's arguments. At the conclusion of the hearing, the Court took the matter under advisement and directed the parties to brief the legal issues. The Chapter 13 Trustee filed his brief on June 3, 2021, and BMW filed its brief on June 22, 2021. (Dckt. 100, 101). No brief was filed by the Debtors. The Court has reviewed the parties' briefs, and this matter is now ripe for ruling.

## III. <u>Discussion</u>

### A. <u>Treatment of Secured Claims in Chapter 13</u>

"Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts." *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). It "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015). To attain confirmation of a Chapter 13 plan, a debtor must satisfy the requirements of 11

7

U.S.C. § 1325(a). Pertinent to this case, § 1325(a)(5) provides that a plan's proposed treatment of a secured claim can be confirmed if one of three conditions is satisfied:

> The secured creditor accepts the plan, see 11 U.S.C. § 1325(A); the debtor surrenders the property securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called "cram down" power, see § 1325(a)(5)(B). Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor, the creditor retains a lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, see § 1325(a)(5)(B)(ii).

*Assoc's. Com. Corp. v. Rash*, 520 U.S. 953, 956-57 (1997). *See also Santander Consumer USA, Inc. v. Brown (In re Brown)*, 746 F.3d 1236, 1239 (11th Cir. 2014) ("a plan's treatment of an 'allowed secured claim' can be confirmed if: the secured creditor accepts the plan, the debtor retains the collateral and makes payments to the creditor, or the debtor surrenders the collateral."). The third option, cramdown, reflects the general principle that "Chapter 13 debtors enjoy 'broad powers to modify the rights of the holders of secured claims.'" *Am. Gen. Fin., Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203, 1205-06 (11th Cir. 2002) (quoting *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 470 (B.A.P. 6th Cir. 1998)). *See also* 11 U.S.C. § 1322(b)(2) (the plan may, with certain exceptions, "modify the rights of holders of secured claims").

8

"The value of the allowed secured claim is governed by § 506(a) of the Code."

*Rash*, 520 U.S. at 957. This Section provides in pertinent part as follows:

> An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). In other words, "Section 506(a)(1) bifurcates a secured creditor's allowed claim into secured and unsecured portions based on the collateral's value." *Brown*, 746 F.3d at 1239. Taken together, then, § 1325(a)(5)(B) and § 506(a)(1) "permit the bifurcation of an undersecured claim into its secured and unsecured parts, with creditors only assured of receiving full value for the secured portion of the claim." *Paschen*, 296 F.3d at 1206.

B. The Effect of the Hanging Paragraph on Cramdown of a 910 Vehicle

Here, the Debtors originally proposed to retain the motor vehicle and to make payments to BMW over the life of the plan pursuant to § 1325(a)(5)(B). Notwithstanding the bifurcation provisions of § 1325(a)(5)(B) and § 506(a)(1), however, the Debtors did not propose to bifurcate BMW's claim. The Code provides "certain exceptions to a Chapter 13 debtor's power to bifurcate an undersecured claim in a cramdown." *In re Scarver*, 555 B.R. 822, 826 (Bankr. M.D. Ala. 2016). One such exception is the "hanging paragraph" of § 1325(a). As part of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

Congress inserted this new paragraph below § 1325(a)(9) and above § 1325(b). The

hanging paragraph provides as follows:

> For purposes of paragraph (5), section 506 shall not apply
> to a claim described in that paragraph if the creditor has a
> purchase money security interest securing the debt that is
> the subject of the claim, the debt was incurred within the
> 910-day period preceding the date of the filing of the
> petition, and the collateral for that debt consists of a motor
> vehicle (as defined in section 30102 of title 49) acquired
> for the personal use of the debtor, or if collateral for that
> debt consists of any other thing of value, if the debt was
> incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9) (hanging paragraph). To fall under the hanging paragraph,

and thus be protected from bifurcation, a creditor's claim must satisfy four

requirements: "(1) the creditor must have a 'purchase money security interest'[5] in

the collateral; (2) the debt must have been incurred within 910 days before the filing

of the debtor's bankruptcy case; (3) the collateral for the debt must consist of a motor

---

[5] "A security interest in goods is a purchase money security interest . . . [t]o the extent that the goods are purchase money collateral with respect to that security interest[.]" O.C.G.A. § 11-9-103(b)(1). "Purchase money collateral" means "goods or software that secured a purchase money obligation with respect to that collateral." O.C.G.A. § 11-9-103(a)(1). And "purchase money obligation," in turn, means "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." O.C.G.A. § 11-9-103(a)(2). In other words, "PMSI status 'requires a close nexus between the acquisition of collateral and the secured obligation.'" *In re McClow*, No. 09-40164, 2009 WL 8592832, at *2 (Bankr. S.D. Ga. Dec. 18, 2009) (Davis, J.) (quoting U.C.C. § 9-103 cmt. n. 3 (2002)).

vehicle;[6] and (4) the vehicle must have been acquired for the personal use of the debtor." *Graupner v. Nuvell Credit Corp. (In re Graupner)*, 537 F.3d 1295, 1298 (11th Cir. 2008). If these requirements are met, "the creditor holds what is called a '910-claim' and is entitled to full payment on its claim, regardless of the vehicle's value[.]" *Scarver*, 555 B.R. at 827. Here, the parties agree that BMW holds a 910-claim and thus under the hanging paragraph had to be paid in full under the Debtors' Chapter 13 plan as originally confirmed.

C. The Effect of the Hanging Paragraph on Surrender of a 910 Vehicle

Although the hanging paragraph requires full payment of a 910-claim when the debtor elects to retain the collateral, it does not explicitly address what happens when a debtor elects to surrender the collateral. Prior to BAPCPA's insertion of the hanging paragraph, "if a Chapter 13 debtor surrendered the property, the creditor could pursue an unsecured deficiency claim if it had a right to collect a deficiency under applicable nonbankruptcy law." *DaimlerChrysler Fin. Serv. Am. LLC v. Barrett (In re Barrett)*, 543 F.3d 1239 (11th Cir. 2008).

The hanging paragraph, however, makes bifurcation under § 506(a) inapplicable to a 910-claim, and some courts interpreted this to mean that such a claim is fully secured, with the result that surrender of the collateral fully satisfies

---

[6] The hanging paragraph also prohibits "modification of a security interest in 'any other thing' if purchased within one year of the petition date." *In re Sandifer*, 603 B.R. 648, 649-50 (Bankr. M.D. Ga. 2019) (Laney, J.).

the claim and leaves no deficiency. As one leading treatise explains, "[f]ollowing BAPCPA's enactment of the [hanging paragraph], the majority of bankruptcy courts ruled that, when Code § 506(a) does not apply to a secured claim, the creditor is not entitled to the allowance of an unsecured deficiency claim." Drake, Bonapfel, Goodman, *Chapter 13 Practice and Procedure* § 5:24 (2020 ed.). "As the debate shifted to the courts of appeals, however, *every* circuit addressing the issue ruled that the creditor retains an unsecured deficiency claim when a debtor surrenders the collateral."[7] *Id.* (emphasis added).

The Eleventh Circuit addressed this issue in *DaimlerChrysler Fin. Serv. Am. LLC v. Barrett (In re Barrett)*, 543 F.3d 1239 (11th Cir. 2008). There, the Chapter 13 debtors proposed in their plan to surrender the vehicle to the creditor in full satisfaction of the claim. *Id.* at 1241. The creditor objected to confirmation, asserting that the plan failed to provide for the payment of any deficiency balance, but the bankruptcy court overruled the objection and confirmed the plan. *Id.* On direct appeal, the Eleventh Circuit reversed the bankruptcy court's decision. Agreeing with the Seventh Circuit in *In re Wright*, 492 F.3d 829, 832 (7th Cir. 2007), the Eleventh

---

[7] *See AmeriCredit Fin. Serv., Inc. v. Tompkins*, 604 F.3d 753 (2d Cir. 2010); *DaimlerChrysler Fin. Serv. Am., LLC v. Miller (In re Miller)*, 570 F.3d 633 (5th Cir. 2009); *DaimlerChrysler Fin. Serv. Am. LLC v. Barrett (In re Barrett)*, 543 F.3d 1239 (11th Cir. 2008); *DaimlerChrysler Fin. Serv. Am. LLC v. Ballard (In re Ballard)*, 526 F.3d 634 (10th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *Tidewater Fin. Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008); *In re Wright*, 492 F.3d 829 (7th Cir. 2007). *See also Wells Fargo Fin. Acceptance v. Rodriguez (In re Rodriguez)*, 375 B.R. 535 (B.A.P. 9th Cir. 2007).

Circuit stated that when a debtor surrenders a 910 vehicle post-BAPCPA, the hanging paragraph "knocks out" § 506 and "'leaves the parties to their contractual entitlements.'" *Id.* at 1246 (quoting *Wright*, 492 F.3d at 832). In other words, "the effect of the hanging paragraph is to remove the Bankruptcy Code's method of bifurcation," namely § 506, but "it has no effect on state law rights," such as the right to a deficiency. *Chapter 13 Practice and Procedure* § 5:24.

The Eleventh Circuit provided two reasons for this reading of § 506(a) and the hanging paragraph. First, this outcome is "required by well-established Supreme Court precedent," specifically *Butner v. U.S.*, 440 U.S. 48 (1979). In *Butner*, the Supreme Court held that "state law determines rights and obligations when the Code does not supply a federal rule." *Wright*, 492 F.3d at 832. According to the Eleventh Circuit in *Barrett* and the Seventh Circuit in *Wright*, the bankruptcy courts that initially prohibited a deficiency claim upon surrender of a 910 vehicle "made the mistake of assuming that the sales contracts and state law are irrelevant unless implemented by the Bankruptcy Code." *Barrett*, 543 F.3d at 1243-44. In fact, the opposite is true; "rights under state law count in bankruptcy unless the Code says otherwise." *Wright*, 492 F.3d at 832-33. Thus, by rendering § 506 inapplicable to a 910-claim, the hanging paragraph leaves the parties to their state law contractual rights.

13

Second, the Eleventh Circuit observed that "a contrary result," i.e. eliminating the creditor's deficiency claim upon surrender, "would be inconsistent with legislative intent." *Barrett*, 543 F.3d at 1246. Specifically, "the legislative history of the hanging paragraph 'leaves little doubt that its architects intended only good things for car lenders and other lienholders.'" *Id.* at 1246 (quoting *Graupner*, 537 F.3d at 1297). Based on this legislative history, "car lenders and lienholders should clearly not be *negatively impacted* by the hanging paragraph in situations where the debtor surrenders a 910 vehicle, yet that is exactly the effect if surrendering the vehicle is deemed to fully satisfy the debt when the contract provides for recourse." *Id.* (emphasis in original). Referencing one of the stated purposes of BAPCPA, the Eleventh Circuit inferred that "Congress obviously did not intend such a result in legislation purporting to "Restor[e] the Foundation for Secured Credit." *Id.*

For both reasons, the Eleventh Circuit held "that a creditor may pursue a deficiency claim when the debtor surrenders a 910 vehicle. The deficiency claim is to be governed by the parties' contract and applicable state law, and will depend on whether the contract and state law provide for recourse." *Id.* at 1247. Here, Debtors' counsel acknowledged at the May 4, 2021 hearing that BMW had a contractual right to a deficiency claim prior to confirmation of the Modified Plan.[8] Further, under

_____

[8] The contract between the Debtors and BMW, which is attached to BMW's proof of claim, grants BMW a security interest in the vehicle and explicitly states that the Debtors "will be liable for any deficiency to the extent permitted by applicable law." (Claim 7-1, Part 2, pp. 8-9).

applicable Georgia law, a motor vehicle lienholder is entitled to a deficiency claim.
*See* O.C.G.A. § 10-1-36(a); O.C.G.A. § 11-9-615(d); *Calcote v. Citizens & S. Nat'l Bank*, 179 Ga. App. 132, 133 (1986) (sale of automobile is governed by both Article 9 of Georgia's Uniform Commercial Code and Georgia's Motor Vehicle Sales Finance Act). Thus, under the Eleventh Circuit's holding in *Barrett*, the Debtors would not have been permitted to deprive BMW of its state law contractual right to a deficiency claim by surrendering the vehicle in their Chapter 13 plan. As will be addressed below, neither could the Debtors do so through a modified plan.

D. The Trustee's Interpretation of the Modified Plan Conflicts with *Barrett*

At the outset of this case, the Debtors elected to retain the vehicle, and their plan containing that proposal was confirmed on September 2, 2020. (Dckt. 69). On November 5, 2020, however, they moved to modify their confirmed plan to surrender the vehicle to BMW. (Dckt. 84). As recited above, the relevant provision of the Modified Plan states that the collateral "is surrendered to the creditor to satisfy the *secured* claim to the extent shown below upon confirmation of this proposed modification." (Dckt. 84, p. 2) (emphasis added). It further states that "[a]ny allowed deficiency balance resulting from a creditor's disposition of the collateral will be treated as an unsecured claim . . . if the creditor amends its previously filed, timely claim within 180 days from the entry of the order confirming this proposed modification or by such additional time as the creditor may be granted upon motion

15

filed within that 180-day period." (Dckt. 84, p. 2). Under the heading "Amount of Claim Satisfied," the Debtors typed "Full Satisfaction." (Dckt. 84, p. 2). As interpreted by the Chapter 13 Trustee, this language in the Modified Plan provided for the surrender of the vehicle in full satisfaction of the debt to BMW. But if that interpretation is correct, then the Modified Plan would have violated the Eleventh Circuit's holding in *Barrett*.

The Bankruptcy Code provides that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim[.]" 11 U.S.C. § 1329(a). A post-confirmation plan modification must satisfy three requirements. *In re Fayson*, 573 B.R. 531, 534 (Bankr. D. Del. 2017); *Scarver*, 555 B.R. at 827. First, the modification must meet one of the criteria set forth in § 1329(a), which, pertinent to this case, requires the modification to do one of the following:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; [or]
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan[.]

16

11 U.S.C. § 1329(a)(1)-(3). Second, the modification must comply with the confirmation requirements set forth in § 1322(a) and § 1325(a), as must any Chapter 13 plan. 11 U.S.C. § 1329(b)(1). Third, the modification generally cannot extend the payment period beyond five years after the first plan payment was due, nor extend the original commitment period of the debtor's disposable income except for cause. 11 U.S.C. § 1329(c). The Eleventh Circuit recently held that "a debtor need not make any threshold showing of a change in circumstances before proposing a modification to a confirmed plan under § 1329." *Whaley v. Guillen (In re Guillen)*, 972 F.3d 1221, 1230 (11th Cir. 2020). "The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." 11 U.S.C. § 1329(b)(2).

Courts are divided as to "whether a Chapter 13 debtor acting in good faith may modify her confirmed plan to surrender collateral and reclassify any deficiency balance as an unsecured claim." *Scarver*, 555 B.R. at 825. The minority view, adopted by the Sixth Circuit in *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 296 (6th Cir. 2005), "holds that a Chapter 13 debtor may not reclassify a secured claim after plan confirmation under any circumstances."[9] *Scarver*, 555 B.R. at 828. Under the majority view, "a Chapter 13 debtor may surrender collateral and reclassify any resulting deficiency balance from a secured debt to an unsecured debt,

---

[9] *See also Ruskin v. DaimlerChrysler Servs., N.A., LLC (In re Adkins)*, 425 F.3d 296 (6th Cir. 2005).

if done in good faith." *Scarver*, 555 B.R. at 828. The majority view has been the prevailing view for more than a decade.[10] *Id. See also In re Toliver*, 603 B.R. 420, 422-23 (Bankr. E.D. Wis. 2019); *Fayson*, 573 B.R. at 533; *Bank One, NA v. Leuellen (In re Leuellen)*, 322 B.R. 648 (Bankr. S.D. Ind. 2005); *In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001).

But neither view permits a debtor to wipe out a creditor's deficiency claim through a modified plan, as the Trustee now claims the Debtors sought to do here. For example, in *Scarver*, the debtor initially proposed to retain and make payments on a 910 vehicle. *Scarver*, 555 B.R. at 825. After the plan was confirmed, the debtor was involved in a traffic accident, and the vehicle was declared a total loss. *Id.* The debtor modified her plan to surrender the vehicle, along with the insurance proceeds. *Id.* at 826. The creditor did not object, and the bankruptcy court confirmed the plan. *Id.* Several months later, the creditor filed a motion to determine its secured status. *Id.* Ruling on that motion, the bankruptcy court adopted the majority view permitting reclassification of a secured claim. Citing *Barrett*, the court stated that "post-confirmation surrender of collateral leaves an undersecured creditor with an unsecured deficiency balance under § 506(a) and state law." 555 B.R. at 837. Faced

---

[10] There is no binding Eleventh Circuit precedent on this issue. *See In re Moorer*, No. 15-32592-DHW, 2017 WL 3499280, at *1 (Bankr. M.D. Ala. Aug. 15, 2017) ("Although the holding in *Nolan* is the only circuit level decision on this issue, the majority of courts to have addressed the issue disagree with the holding in *Nolan*.").

with similar facts, the bankruptcy court in *Fayson* also adopted the majority view and stated that any deficiency would be an unsecured claim. 573 B.R. at 537. Nothing in these cases suggests that a creditor's deficiency claim is eliminated. Nor would eliminating a deficiency claim via plan modification be consistent with the general rule that "the Code does not allow a debtor to do in a modified plan what she could not do first under a confirmed plan." *Fayson*, 573 B.R. at 536.

*Barrett*, therefore, controls. Just as, under *Barrett*, a debtor cannot surrender a 910 vehicle in full satisfaction of an undersecured creditor's claim, a debtor is likewise prohibited from doing the same through a modified plan. In either case, the creditor is entitled to pursue a deficiency claim governed by the parties' contract and applicable state law. If, as the Chapter 13 Trustee now asserts, the Modified Plan provided for the surrender of the vehicle in full satisfaction of the entire debt, barring BMW from filing a deficiency claim, then the Modified Plan would have violated *Barrett*.

Because the Modified Plan would have been improper under this reading, the Chapter 13 Trustee should have objected to its confirmation. The Code mandates that "[t]he trustee shall . . . appear and be heard at any hearing that concerns . . . modification of the plan after confirmation." 11 U.S.C. § 1302(b)(2)(C). Implicit in this duty is the "authority to object to a plan that does not comply with applicable provisions of the Code." *Chapter 13 Practice and Procedure* § 17:3 (collecting

19

cases). *See also Andrews v. Loheit (In re Andrews)*, 155 B.R. 769, 771 (B.A.P. 9th Cir. 1993) ("The duty to appear and be heard . . . encompasses the duty to review plans for compliance with confirmation requirements and to make a recommendation to the court on confirmation."). As the representative of the bankruptcy estate, the Chapter 13 Trustee must serve the interests of *all* creditors, not just unsecured creditors. *Overbaugh v. Household Bank N.A. (In re Overbaugh)*, 559 F.3d 125, 129-30 (2d Cir. 2009); *Andrews*, 155 B.R. at 772; *In re Shelton*, 592 B.R. 193, 212 (Bankr. N.D. Ill. 2018). The Chapter 13 Trustee also should have objected on the grounds that the Modified Plan discriminates unfairly against BMW relative to other general unsecured creditors.[11] Yet not only did the Chapter 13 Trustee fail to object to confirmation of the Modified Plan; he now asserts that BMW is barred from seeking a deficiency claim, to which it would otherwise be entitled, under principles of res judicata.

E. The Modified Plan Does Not Prohibit the Filing of a Deficiency Claim

The Chapter 13 Trustee argues that "by failing to object to the Modification, BMW waived its right to challenge its treatment under the modified Plan," even if that treatment violated *Barrett*. (Dckt. 100, p. 4). Under the Bankruptcy Code, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the

---

[11] Section 1322(a)(3) requires that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." 11 U.S.C. § 1322(a)(3). *See In re Abaunza*, 452 B.R. 866, 869-70 (Bankr. S.D. Fla. 2011).

claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In *United Student Aid Funds, Inc. v. Espinosa*, the Supreme Court held that "an order that confirms the discharge of a student loan debt in the absence of an undue hardship finding or an adversary proceeding, or both," contrary to certain provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, is not a void judgment for purposes of Rule 60(b)(4) of the Federal Rules of Civil Procedure.[12] 559 U.S. 260, 272-76 (2010). Courts have interpreted *Espinosa* to mean "that the provisions of a confirmed Chapter 13 plan are binding on the debtor and creditors alike, regardless of whether a claim is impaired under the plan or whether the creditor has accepted the terms of the plan." *In re Shealy*, 599 B.R. 397, 402 (Bankr. M.D. Ga. 2019) (Carter, J.).

Thus, when a bankruptcy court enters an order confirming a plan, the terms of the plan have a "preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'" *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015). "Therefore, once final, the plan essentially has a res judicata effect[.]" *Smith v. Rushmore Loan Mgmt. Servs.*

---

[12] Section 523(a)(8) provides that student loan debt may only be discharged if "excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). Further, a bankruptcy court must make this undue hardship determination in an adversary proceeding pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7001(6). The plan in *Espinosa* violated these requirements, but the creditor failed to timely object to confirmation.

*(In re Smith)*, 575 B.R. 869, 876 (Bankr. W.D. Ark. 2017). As one court put it, "[a] plan confirmation order is nearly impenetrable as to the issues necessary for confirmation of the bankruptcy plan." *AgGeorgia Farm Credit, ACA v. Wynn (In re Wynn)*, 627 B.R. 192, 197-98 (Bankr. M.D. Ga. 2021) (Laney, J.).

But the res judicata principles of *Espinosa* do not support the Chapter 13 Trustee's position in this case because, contrary to the Chapter 13 Trustee's interpretation, the Modified Plan does not bar BMW from filing a deficiency claim. The Modified Plan states that "[a]ny allowed deficiency balance resulting from a creditor's disposition of the collateral will be treated as an unsecured claim in paragraph 4(h) of the plan if the creditor amends its previously filed, timely claim within 180 days from the entry of the order confirming this proposed modification or by such additional time as the creditor may be granted upon motion filed within that 180-day period." (Dckt. 84, p. 2). BMW complied with this requirement and timely filed its deficiency claim (Claim No. 7-2) on March 3, 2021, less than 180 days after disposition of the vehicle on January 25, 2021.

In support of his position that the Modified Plan prohibits BMW from filing a deficiency claim, the Chapter 13 Trustee relies on the first sentence of the surrender provision, which states "[t]he following collateral is surrendered to the creditor to satisfy the secured claim *to the extent shown below* upon confirmation of this proposed modification." (Dckt. 84, p. 2) (emphasis added). Reading this sentence in

22

conjunction with the words "Full Satisfaction" under "Amount of Claim Satisfied," the Chapter 13 Trustee interprets the Modified Plan to mean that the surrender of the vehicle fully satisfied the debt to BMW. (Dckt. 100, p. 3).

But the Chapter 13 Trustee misreads the surrender provision. It does not state that upon surrender the creditor's entire claim is satisfied to the extent shown. Rather, the provision states that the creditor's *secured* claim is satisfied to such extent. In other words, surrender of the collateral satisfies the creditor's allowed secured claim but does not preclude the filing of a deficiency claim. This interpretation is consistent with that of *Branch Banking & Trust Co. v. Coffia (In re Coffia)*, No. 09-50899, 2010 WL 1872878 (Bankr. S.D. Ga. March 22, 2010) (Dalis, J.). In *Coffia*, the debtors' plan proposed to surrender real property to satisfy the secured claim in full. *Id.* at *1. Importantly, the relevant plan language in *Coffia* was identical to the language of the Modified Plan in the instant case: "The following collateral is surrendered to the creditor to satisfy the secured claim to the extent shown below," followed by space for the debtors to list the creditor, to provide a description of the collateral, and to identify the amount of the claim satisfied. (Case No. 09-50899-JSD, Dckt. 6, p. 2). Just as the Debtors in this case typed "Full Satisfaction" under "Amount of Claim Satisfied," in *Coffia* the debtors typed "in full." (Case No. 09-50899-JSD, Dckt. 6, p. 2).

23

The creditor in *Coffia* objected to confirmation on the grounds that "the language in the proposed plan contemplating surrender of the Property 'in full satisfaction' of [the] claim might preclude [the creditor] from amending its claim to unsecured status" after disposition of the collateral. *Coffia*, 2010 WL 1872878, at *1. Ruling on that objection, the court stated that "[n]othing in the language of the Debtors' plan suggests that the surrender is meant to satisfy [the creditor's] entire debt; if such language was included, then the plan could not be confirmed." *Id.* at *2 (citing *Barrett*, 543 F.3d at 1247). Rather, the plan language meant "only that surrender [was] in full satisfaction of [the creditor's] secured claim." *Id.* "Though the surrender of the collateral necessarily satisfies an allowed secured claim, it does not preclude a creditor from pursuing a deficiency claim." *Id.* Accordingly, the court overruled the objection and confirmed the plan, stating that the creditor was "entitled to seek reconsideration of its claim . . . in the event of a deficiency debt after disposition of the Property[.]" *Id.* at *4. As in *Coffia*, so here: the language of the Modified Plan states that surrender eliminates a secured creditor's secured claim, but the creditor retains its right to pursue a deficiency.

Treating a 910-claim as entirely secured even in the context of surrender, as the Chapter 13 Trustee interprets the Modified Plan to do, would resurrect the improper interpretation of the hanging paragraph by bankruptcy courts that initially addressed this issue post-BAPCPA and disallowed deficiency balance claims. These

24

bankruptcy courts held that "by making bifurcation under Code § 506(a) inapplicable for purposes of Code § 1325(a)(5), the hanging paragraph makes [a 910] claim fully secured," and thus "treatment of the claim by surrender of the collateral likewise fully satisfies the claim and leaves no deficiency." *Chapter 13 Practice and Procedure* § 5:24. "Put another way, this view is that the hanging paragraph results in a fiction that the collateral has a value exactly equal to the amount of the claim for purposes of cramdown . . . and that result applies equally when the plan proposes surrender[.]" *Id.* But, as discussed, the Eleventh Circuit in *Barrett* emphatically rejected this view, as has every other circuit court to address the issue. The Modified Plan language here, and the interpretation of identical language in *Coffia*, conform with *Barrett*. When the collateral securing a 910-claim is surrendered under a post-confirmation modification, the claim is bifurcated as a matter of fact. The secured portion represents the liquidation value,[13] and the

---

[13] Surrender of a vehicle under an originally confirmed Chapter 13 plan presents a more complicated issue of valuation. In *Santander Consumer USA, Inc. v. Brown (In re Brown)*, 746 F.3d 1236 (11th Cir. 2014), the debtor's plan provided for the surrender of a vehicle to satisfy the creditor's claim. The bankruptcy court held that § 506(a)(1) and (a)(2) determined the value of the vehicle and thus the amount of the secured claim, which would be satisfied by the surrender. On appeal, the district court and the Eleventh Circuit affirmed. The Eleventh Circuit explained that under § 506(a)(2), the Bankruptcy Code "expressly mandates a replacement value standard," rather than liquidation value, when a Chapter 13 debtor "surrenders property under § 1325(a)(5)(C)[.]" *Id.* at 1240. In a footnote, the Eleventh Circuit quoted *In re Rodriguez*, 375 B.R. 535 (B.A.P. 9th Cir. 2007), where it was suggested that Congress exempted 910 vehicles from § 506 because "without the hanging paragraph, upon surrender of a 910 vehicle, the 'replacement value' would be used to reduce the total amount owed to the 910 creditor, rather than the amount actually realized on liquidation. That would inevitably lead to a smaller deficiency claim." *Brown*, 746 F.3d at 1242 n.3 (quoting *Rodriguez*, 375 B.R. at 544). In any

unsecured portion represents the deficiency balance. Consequently, surrender of the collateral eliminates the secured portion but not the unsecured portion.

The Chapter 13 Trustee additionally relies on the case of *In re Huddle*, No. 06-11076-SSM, 2007 WL 2332390 (Bankr. E.D. Va. Aug. 13, 2007). There, the debtor's plan contained language drafted by the Court stating that the collateral would be surrendered "in satisfaction of the secured portion of [the] creditors' allowed claims" and that "[t]o the extent that the collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a nonpriority unsecured claim." *Id.* at *1. The plan then provided space for the debtor to identify the creditor, the collateral, and the amount of the claim. Under the heading "Full Satisfaction Y/N," the debtor inserted the word "Yes." Based on the creditor's failure to object to confirmation, the court in *Huddle* sustained the debtor's objection to the creditor's deficiency claim, stating that "the prominent typographical placement of the 'Yes' response" should have elicited further inquiry from the creditor. *Id.* at *6.

There are some similarities between the plan language in *Huddle* and the disputed language in the instant case. But in *Huddle*, the plan contained the heading "Full Satisfaction Y/N," to which the debtors responded "Yes"; the plan thus

---

event, this case does not involve a surrender under the originally confirmed plan, and the Chapter 13 Trustee did not object based on the amount of the deficiency claim.

arguably contemplated that surrender might fully satisfy the debt. Here, in contrast, the corresponding heading is "Amount of Claim Satisfied," which invites a debtor to insert a dollar amount (or some other expression of how the total claim was reduced). If the amount realized from the liquidation sale of the collateral is known, then the debtor might insert such amount.[14] More typically, a debtor will not know how much the creditor will realize from disposition of the collateral because, as here, the collateral is surrendered at the time of modification.[15] To expedite plan modification, the debtor may file the proposed modified plan before such disposition is accomplished. By definition, the amount obtained will eliminate the entirety of the secured claim. Thus, consistent with *Coffia*, the Modified Plan language of "full satisfaction" should be understood to satisfy only the secured portion of the claim, not the entire debt. While the modification form may invite a dollar amount, it does not invite a plan provision that violates *Barrett*.

Moreover, *Huddle* was decided before many circuit courts, including the Eleventh Circuit in *Barrett*, ruled that surrender of a 910 vehicle does not deprive a

---

[14] Alternatively, if the collateral is totaled in an accident, the insurance payment, plus any salvage value received by the creditor, may be the amount of the secured claim satisfied.

[15] "Surrender of property does not usually occur until the court has confirmed the plan. Unless the creditor has already obtained relief from the stay and liquidated its collateral at the time of confirmation, therefore, the amount of the deficiency claim will not be known." *Chapter 13 Practice and Procedure* § 5:24.

creditor of its right to file a deficiency claim.[16] The collateral in *Huddle*, a recreational vehicle, was not a 910 vehicle. *Id.* at *5. And, importantly, the court in *Huddle* did not discuss the plan language stating that surrender would satisfy the "secured portion of [the] creditors' allowed claims." *Id.* at *1. As mentioned, the court in *Coffia* interpreted similar language to mean that surrender was in full satisfaction of the secured claim, not of the entire debt. The Court therefore finds *Huddle* unpersuasive on this issue.

The Chapter 13 Trustee also points to the word "allowed" in the Modified Plan's language that "[a]ny *allowed* deficiency balance resulting from a creditor's disposition of the collateral will be treated as an unsecured claim[.]" (Dckt. 84, p. 2) (emphasis added). In his Claim Objection, the Chapter 13 Trustee states that there is "no order granting leave to file the deficiency claim." (Dckt. 95, p. 2). And he argues in his brief that BMW "could have no 'allowed' deficiency claim considering that its claim was entirely satisfied." (Dckt. 100, p. 3). This is a circular argument. The issue in this case is whether the Modified Plan (dckt. 84), which was confirmed by order of the Court (dckt. 93), authorized the filing of such deficiency claim. The Chapter 13 Trustee simply presupposes that the Modified Plan does not permit such

---

[16] In 2008, the year after *Huddle* was decided, the Fourth Circuit issued its opinion in *Tidewater Fin. Co. v. Kenney*, 531 F.3d 312 (4th Cir. 2008) holding that "any deficiency after the sale of the [surrendered 910] vehicle is an unsecured debt that must be treated as an unsecured claim in the bankruptcy reorganization plan." *Id.* at 321.

deficiency in order to argue that BMW's deficiency balance was not "allowed" by an order of the Court.[17] The Court rejects this fallacious argument.

### F. Any Ambiguity Should Be Interpreted Consistent with *Barrett*

The parties disagree as to whether the language of the Modified Plan is ambiguous. The Chapter 13 Trustee argues that the surrender provision in the Modified Plan unambiguously "foreclose[s] any opportunity for BMW to file an unsecured deficiency claim[.]" (Dckt. 100, pp. 2-3). BMW, in contrast, argued at the May 4, 2021 hearing that the Modified Plan is ambiguous and should be construed against the Debtors based on the well-known rule of construction that a plan of reorganization "should be construed against the drafter." *Hill v. Greentree Serv., LLC (In re Hill)*, 572 B.R. 793, 800 (Bankr. N.D. Ga. 2017) (Hagenau, J.). *See also In re Sunnyland Farms, Inc.*, No. 14-10231-t11, 2016 WL 1212723, at *5 (Bankr. D.N.M. March 28, 2016) (collecting cases). In response to BMW's argument, the Debtors asserted at the same hearing that the language of the Modified Plan was drafted not by the Debtors, but by the Court, and thus this rule should not apply.[18]

---

[17] The term "allowed deficiency balance" is not a defined term in § 101 of the Bankruptcy Code, but it evokes § 502(a), which states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). To be sure, a deficiency claim may be disallowed for a variety of reasons. For example, the manner of disposition may be commercially unreasonable, or the resulting debt balance may be miscalculated. But the Chapter 13 Trustee cites no other reason for disallowance in this case.

[18] *See, e.g., Huddle*, 2007 WL 2332390, at *6 n.5.

It is true that in this district, General Order Number 2017-4 requires the party seeking to modify a Chapter 13 plan after confirmation to use the Court's local form 2017-4-B ("Modification to Chapter 13 Plan After Confirmation"). The surrender provision of the form states that the collateral "is surrendered to the creditor to satisfy the secured claim to the extent shown below" and that "[a]ny allowed deficiency balance resulting from a creditor's disposition of the collateral will be treated as an unsecured claim."[19] Arguably, any ambiguity in the Modified Plan was introduced not by the Court's form, but by the Debtors' insertion of the words "Full Satisfaction" under the heading "Amount of Claim Satisfied." (Dckt. 84, p. 2). But as explained above, there may be reasons for a debtor's inability to assign a specific dollar amount to the secured claim that is satisfied by surrender.

"A confirmed plan generally is interpreted according to the rules governing the interpretation of contracts." *NM Enter., Inc. v. Harrington (In re Flying Star Cafes, Inc.)*, 568 B.R. 129, 136 (Bankr. D.N.M. 2017) (citing *Miller v. U.S.*, 364 F.3d 999, 1004 (9th Cir. 2004). "Just like with contracts, '[a] confirmed plan is ambiguous if it is capable of more than one reasonable interpretation[.]" *Hill*, 572 B.R. at 799 (quoting *In re Hamilton*, No. 14-10665 tl13, 2017 WL 1533382, at *3

---

[19] Identical language appears in the surrender provision of the Court's local Chapter 13 plan, Form 113, which conforms to the requirements of Rule 3015.1 of the Federal Rules of Bankruptcy Procedure and must be used in this district pursuant to General Order Number 2017-3 ("Order Adopting Local Chapter 13 Plan").

(Bankr. D.N.M. Apr. 27, 2017)). *See also Kaye v. Blue Bell Creameries, Inc. (In re BFW Liquidation, LLC)*, 899 F.3d 1178, 1188 (11th Cir. 2018) (quoting *Med. Transp. Mgmt. Corp. v. Comm'r of I.R.S.*, 506 F.3d 1364, 1368 (11th Cir. 2007)) (ambiguity means language that "is susceptible to more than one reasonable interpretation").

The Court acknowledges that the Modified Plan, as completed by the Debtors' addition of the words "Full Satisfaction," may be susceptible to more than one reasonable interpretation and thus may be ambiguous. However, the Court will not interpret either its own form plan or the order confirming the Modified Plan to violate the provisions of the Bankruptcy Code as interpreted by the Eleventh Circuit in *Barrett*. "[A]n ambiguous plan should be interpreted to comply with, not violate, the Code." *Hamilton*, 2017 WL 1533382, at *4. *See also In re Sledge*, No. 15-51114, 2018 WL 4090584 (Bankr. N.D. Ohio Aug. 27, 2018) ("[T]o the extent that the Plan is ambiguous . . . the Plan will be interpreted so as to be confirmable."); *Hill*, 572 B.R. at 799 ("[T]he plan should be interpreted to comply with the Bankruptcy Code."); *Huddle*, 2007 WL 2332390, at *6 ("The general rule is that ambiguous bankruptcy plan provisions are construed so as to comport with rather than contravene express provisions of the Bankruptcy Code.").

The Court will not presume that the Debtors intended to violate *Barrett* in their Modified Plan by proposing to surrender the 910 vehicle in full satisfaction of

31

BMW's claim. Nor will the Court presume that the Chapter 13 Trustee intended to violate *Barrett* by failing to object to the Modified Plan. The most straightforward way to reconcile these issues is to interpret the Modified Plan to mean what it says. The Debtors' surrender of the vehicle satisfied BMW's secured claim, and BMW properly filed proof of its deficiency claim pursuant to the Modified Plan.

## IV. Conclusion

For the reasons set forth above, the Court will overrule the Chapter 13 Trustee's Claim Objection (dckt. 95) by separate order.

Dated at Savannah, Georgia, this 15th day of July, 2021.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia

32